Mr. McCord, welcome. Good morning. Just barely. We'd love to hear your argument. Good morning, Your Honor. Thank you very much. REPL was found by the examining attorney to be inherently distinctive, at least as a matter of normal semantics. If there's anything that's horned about trademark law, it's that inherently distinctive marks are registrable. So why is this mark not being registered by the Patent Office? Because it's generic. It's a varietal name. That's their assertion. Well, it is the varietal name. That's the fighting of the board. It is a varietal name, isn't it? Well, it is a varietal name. I can certainly agree with that. And therefore, it's generic. You can't trademark car, chair, something of that sort, can you? You can for inherently distinctive usage, but primarily the statute requires that you reach the determination of whether the mark is generic or not by looking at how the consuming public views it. So your view is that there had to have been evidence adduced at the Trial and Trademark Appeals Board or the administrative process that it was generic and that it didn't have any distinctive meaning in terms of identifying source. That's your position. Exactly, Your Honor. What was the specific deficiency, then, in the various internet-sourced items on which the examiner and indirectly the board relied? None of them were evidence that the consuming public says, I'm going to go put some rebel in my yard, and it could be any kind of grass seed or even the varietal. I'm sorry. I'm not following you. Well, in order to be evidence of varietal, excuse me, of generic use, it would have to be evidence that people use the word rebel to talk about grass seed generally or even this particular variety generally, regardless of source. It was simple to me, reviewing what the examiner cited and attached, that rebel was the commonly used designation for this particular variety of grass by everybody who cares about grass, buyers, sellers, scientists, and everybody else. I didn't see any evidence that suggested anything other than all those interested in grass refer to this variety by the name rebel. And was there any other name? It's not like there was a generic name and a trade name. No, there was not another name presented in that fashion. Much like you have ibuprofen and Advil, but there was only one name here. There's only one name, but there's no evidence that when that mark was being used, it was being used to indicate the kind of seed as opposed to the source of the seed. Well, I think there is exactly such evidence. That seems to me to be the only way you can read the various documents cited by the examiner. Wasn't there an application for plant variety protection registration? Isn't that the evidence? That's evidence that it was given that bridal name. It's not evidence that the mark was generic. The consuming public uses that word to describe that kind of seed. How else can they order it? When they go to a store where you buy seed, how else could they describe what they want? It's the kind of green stuff, kind of a wide blade, and it tilts this way. They have to use a name to tell the seller which bin to pull the seed out of. They use the name rebel. Come on. Your Honor, that's really not a germane question to the statute. The Montrachet cheese case, how else are you going to get that kind of cheese other than use the word Montrachet? This Court said it doesn't matter. It's registrable. It's a trademark. How else are you going to ask for Montrachet cheese but use the name? That wasn't a varietal name, though. That's different. It seems strange to me that when you applied for this varietal name, you wouldn't have thought about, gee whiz, we might want to save this rebel name to use in the future. Why don't we use something like rambunctious or something that we really don't ever want to use again? In 1980, when the application was filed for the Plant Variety Protection, the UPAF Convention was not the law. Yeah, but there was case law going back to 1942. How much notice do you need to realize that you're taking a big risk if you're going to use the commercial name as the Plant Variety Protection Act application designation for the variety? What I take it everybody else does is they call their variety Fescue 437 in their application, and then they use the trade name in commerce. That's what you should have done. Why should you be rescued from the oversight? Because the statute says we're entitled to. The statute says that in order to determine that this is not registrable, that this is generic, you've got to find, or the fact finder has to find, that the relevant consuming public sees that word and they think that's a kind rather than a source. It looks to me like there's substantial evidence to that exact effect even without the plant variety application. And when you add in the plant variety application, although it's now an expired plant patent, it seems to me the evidence is not merely substantial, it's way more than substantial. It's virtually conclusive. I will grant you it's conclusive that it's the varietal name. It is nonexistent that it is generic. I may refer you to the appendix of our main brief, page 27. At the bottom of that page, there's a specimen. This was some of the evidence deduced by the examiner. It talks about Rebel Supreme Tall Fescue. If a consumer looks at that, they're going to say it looks like Rebel brand tall fescue. And there are other examples like that here, too. In particular, the- What about the Dixie Rose case? The Dixie Rose case, as decided by the Court of Appeals for the District of Columbia, said we were looking for what the public perception is. And we come up with the fact that the public perception in that case is that this is a generic name. And so, therefore- Why? Because it's the varietal name for that rose. Because they found that the public perceives it that way. Well, how else could the public perceive it? That's the name given to it by he who bred it. Your Honor, the public- If that's inevitable, that the public's going to look at it that way, then it should be very easy for the Patent Office to come up with evidence of it. Well, nobody's saying that it wouldn't be easy for the Patent Office to come up with further evidence. The issue is whether further evidence is really called for or whether the extent evidence is sufficient. I would agree with that. And my position is that it clearly is not sufficient. It shows use of the word- Did you put in any evidence showing that when people come to buy this variety of grass at a seed store, they ask for something by a name different from rebel? No, but that's not- We have an inherently distinctive mark as found by the examining attorney, and therefore the burdens would be on the Patent Office to find other ones. It may be, but if the Patent Office, as is the case here, has put forth certain evidence, documentary evidence, and you came in with overwhelmingly more weighty contrary evidence, that would strongly support the conclusion that the Patent Office hasn't carried its burden. But what actually seems to have happened here is the Patent Office put in the evidence it did put in, and you put in nothing, and so you're banking on our finding that the Patent Office evidence was less than substantial. Yes, Your Honor, because we have an inherently distinctive mark, and the statute says that in order to- If it's not generic, you deserve the registration. Thank you. The problem is that the Board found that it was generic, and had a certain record of tending to support that. So it seems to me you have to show that that record is fatally deficient. The Board found that the mark was generic solely on the basis of the fact that they found it was a rival name. They made no effort to look at- I don't think I can agree with that. The Board also found that it was used as the name for this particular kind of grass, and that no other name was used for this particular variety of grass. So it not only was the name given to the variety upon its creation, but according to the language of the Board opinion, was uniformly so termed by everybody involved thereafter. The word was used in the evidence of record, certainly, but there's nothing there that says when that word is used, that it's being used other than as a source indicator. Sure there is. The Board found that it's used to dedicate the variety of grass, not the source of the seed. This is the opposite of Montrachet. In Montrachet, it started out only as the source designator, and the Patent Office later argued that it had become generic. This is a case where it was never a source indicator. From day one, it was a variety indicator. I'm not sure I can agree with you, Your Honor. Just on a timing basis, I think our first use date was prior to the date when the application for the Plant Variety Protection was filed, the application for that certificate. So therefore, there was some... That's even worse. Yeah, that's even worse, that even before you sought protection, you called your variety Rebel, and nothing but Rebel. Then when you did seek protection, you again called it Rebel, and nothing but Rebel, and so has everybody ever since. That's the slam-dunk case of genericness. I don't think what we did was any different than what the Montrachet cheese people did. They had a name, and the question was whether it lost its power, whether it became generic. Here, you began generic. You began that way, and the principle is that a common descriptive name is not a trademark, isn't capable of distinguishing an applicant's goods. Your Honor, it was inherently distinctive. Therefore, it is not inherently generic. It can't be both. Well, when it's said that it's inherently distinctive, a better, more lawyer-like way to express it would be if it weren't for the fact it's generic, it would otherwise be registrable because it otherwise would be inherently distinctive. It's a fanciful name, no question about it. We all agree with that. It's really incontestable. But that doesn't, I don't think, change anything here because the genericness finding cuts off any further analysis. The genericness finding has been put in way before it should. It's been put in before looking at how the public uses the mark. What hint is there that the public uses the word in any way other than to refer to this type of grass or the seeds that sprout into this particular grass? The same rationale as the Montrachet Cheesecakes. Monopoly has corrected. If you want to buy that type of board game, you have to use the word monopoly. Where does the PTO hold that this name is inherently distinctive? Where? Yes, please. It's in the... Is it on page 3 of its opinion that states, however, the examining attorney states in the alternative that if the proposed mark is determined not to be generic and does function as a mark, it should be considered inherently distinctive. Is that what you're referring to? I'm not seeing exactly your language, but yes, it's that sort of... That doesn't sound like a holding that it's inherently distinctive. That says if it's found not to be generic, which is the ultimate issue here. Your Honor, that's correct. And the statute and precedent of this Court says, let's look to see what the public thinks and then we'll decide whether it's generic or not. So I take it you would have us overrule Dixie Rose? I don't think that's necessary, because if Dixie Rose said that we're looking at the public perception, I would have had you overrule the board below. I have just a minute left in rebuttal if I may reserve it. Yes, sir, you should. Mr. Walsh. Thank you, Your Honor. May it please the Court. It's perfectly clear that the panel has read all the materials. And the position we've taken in our brief is a long one, which the Patent Office has held for over 60 years. If someone names a particular variety of plant, assigns the name to it, that becomes the name that's used by the public. There's no other choice. What do you mean, assigns? Assigns the name? The person who picks the name says this is the name of that variety. In the Dixie Rose case, for example. In commerce or in a plant patent application? Both. Either one can do. Either? Either one. A catalog, a plant catalog, such as in Dixie Rose or the Bodger case, that's where they say this is the name of that rose. You want that one, order it by this name. In the PVP application for plant variety protection, they must give a designation or a denomination that operates the same way. What if the applicant had used the word rebel, the single word rebel, in commerce to refer to several different varieties? Wouldn't that change the disposition of this case? If the single name were used to refer to several different things, I think that would have a major impact. One of the things in this case is that the single word rebel has been incorporated into the names for about half a dozen different varieties. The first one is rebel. Then there is rebel 2. That's a different variety. So rebel 2 is the name of that other kind. If you want the first one, order rebel. If you want rebel 2, order rebel 2. Then there's rebel 3. Then there's rebel junior. Then there's rebel century. Is there a rebel yell? That may be coming. Sounds like a rebellion. I would suggest they save that. Maybe they can trademark that. It may be. Use it as a brand, and then it's possible. Would you say, Mr. Walsh, that we'd be required to come to the same disposition of this appeal even if the breeder had never sought a plant patent? Yes, that's correct. Or alternatively, if the breeder had never sold it under this name in commerce but did use it as the designation in a plant patent application? Yes, I think that has to be the same result. So either is sufficient in and of itself. Either is sufficient. And here we have both. An example of a case where there was only the one is the Bodger case, where it was only a catalog. We've named it. Apparently there's no mention of plant patent. Now, is it your view that the fact that the plant patent has since expired is irrelevant? Yes. It's the application that's the critical act, not whether the patent is still in force or has expired. Correct. It's the piece of evidence. And we're adhering to the 1940 decision of the commissioner, which said as much. The expired plant patent clearly doesn't affect this. Do you need to depend on the treaty? We do not. What we're depending on is the basic principle. So it's sort of a make-weight argument to say, and beside it's consistent with the treaty, if you're not really relying on the treaty as your legal authority for your rationale. That's correct. But I think the treaty also suggests how disruptive a change in this principle would become. Yes. Not a legal argument. Anything further? No, Your Honor. Thank you. Thank you. Mr. McCord, if you need it, you may have two minutes. Thank you, Your Honor. I just want to address again the evidence that I didn't address very fully with you previously. In the appendix, the specimens that are the evidence on pages 27 through 38 are the ones that I would call to your attention. I've already talked about one on 27. On page 29, we have a rebel three-tall fescue, which as a consumer looking at that, it's hard to say, oh, that's not a trademark. That's just a genus of the type of seed that's being sold. I think you need to put on your consumer's hat when making this determination because looking at that, one does not know. I doubt that the Board is confused about who the relevant public is. Yes, of course, there were some scientific references in what the examiner came up with, but the Board is perfectly aware, I think beyond the slightest doubt, that it's the relevant public, the consumers of this commodity whose perspective has to be adopted in interpreting the usage of the word. So I don't think it's possible for you to argue that the Board had completely the wrong perspective because it doesn't understand this rudimentary notion of trademark. I think the Board disregarded that rudimentary notion in saying that as soon as we gave the name rebel to this variety in our plant variety protection application, we forfeited our trademark rights. That's not the statutory test. And so I would say if you go back to the statutory test that this Court has always adhered to and that the Trademark Trial and Appeal Board has in these plant variety protection cases deviated from, if you go back to the statutory test, you find that this is not a generic mark and it is registrable. All right, I think we have the position of both sides. We'll take the appeal under advisement. We thank both councils.